**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

|  |  |
|---|---|
| : | |
| SALADIN THOMPSON, : | Civ. No. 18-5115 (KM) |
| : | |
| Petitioner, : | |
| : | |
| v. : | **OPINION** |
| : | |
| THE ATTORNEY GENERAL OF THE : | |
| STATE OF NEW JERSEY, STEVEN : | |
| JOHNSON, : | |
| Respondents. : | |
| : | |

_____

**KEVIN MCNULTY, U.S.D.J.**

## I.      INTRODUCTION

Pro se petitioner Saladin Thompson, a state prisoner currently incarcerated at New Jersey State Prison ("NJSP") in Trenton, New Jersey, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. DE 1. Federal law imposes time limits on when § 2254 petitions may be filed; as relevant here, a prisoner in state custody who wishes to file a petition for a writ of habeas corpus must do so within one year of the date his conviction becomes "final," which generally means the date that the United States Supreme Court denied the prisoner's petition for writ of certiorari, or, if the prisoner did not seek certiorari, the date on which the time to do so expired. In this case, Thompson was convicted of murder and related offenses in 2007, and, after a decade-long journey through the state appellate and post-conviction relief process—during which the one-year deadline was tolled—his conviction became "final" on January 19, 2017, which was the date his time to petition for certiorari expired; the last date to file his habeas petition, then, was January 19, 2018. He did not file the current habeas petition until March 29, 2018. I am thus required to dismiss it unless Thompson can establish either that the clock did not

start running on the limitations period because of some impediment to filing or that extraordinary circumstances warranted equitable tolling of the one-year deadline.

Thompson contends that his petition should be deemed timely because corrections officers either lost or destroyed his legal papers and he was thus unable to file his petition. For the reasons below, I find that Thompson has not established that the missing materials created an impediment sufficient to prevent him from filing or that he is entitled to equitable tolling. Accordingly, the petition is dismissed as untimely. No certificate of appealability shall issue.

Also before the Court is Thompson's request for production of documents. DE 27. To the extent this filing could be construed as a motion, it is denied as moot, because, as explained below, Thompson has already received the documents in question.

## II.     BACKGROUND

### 1.  Procedural History of State Court Decisions

In March 2007, Thompson was convicted of first-degree murder, first-degree attempted murder, and related offenses (DE 7, 7-1) arising from a series of shootings on one evening in July 2005 resulting in one death and two serious injuries. DE 19-19 at 5–7. The state trial court sentenced Thompson to an aggregate term of imprisonment of 67 years and 6 months. DE 7-1 at 3. Thompson appealed and in March 2010 the Appellate Division remanded for the trial court to (1) make findings in connection with Thompson's claim under *Batson v. Kentucky*, 476 U.S. 79 (1986), and *State v. Gilmore*, 511 A.2d 1150 (N.J. 1986); and (2) articulate the sentencing factors relevant to Thompson's sentence. DE 19-19 at 4–21.

In January 2011—i.e., after the Appellate Division had remanded the case but before the trial court had conducted proceedings on remand—Thompson filed a pro se petition for post-conviction relief ("PCR") with the trial court. *State v. Thompson*, 97 A.3d 1179, 1182 (N.J.

2

Super. Ct. App. Div. 2014). In May 2011, the trial court conducted the hearing on remand. *Id.* The court denied Thompson's *Batson/Gilmore* claim and provided reasons for its sentence. *Thompson*, 97 A.3d at 1184. In August 2011, Thompson filed an amended PCR petition and in September 2011, the trial court denied it. *Id.*

Thompson appealed both orders—i.e., the order denying his *Batson/Gilmore* claim and the order denying his PCR petition—resulting in an unusual procedural posture in which his direct appeal and PCR appeal were proceeding simultaneously. In September 2014, the Appellate Division vacated his convictions and sentence on the *Batson* issue and remanded for a new trial, *Thompson*, 97 A.3d at 1189, and, in light of that remand, did not address Thompson's sentencing claims or his PCR-related arguments. *Id.* The New Jersey Supreme Court, however, then reversed the judgment of the Appellate Division, reinstated Thompson's convictions, and remanded the matter to the Appellate Division to consider Thompson's sentencing claim, which was no longer moot. *State v. Thompson*, 132 A.3d 1229, 1245 (N.J. 2016).

In June 2016—i.e., 9 years after Thompson had first been convicted—the Appellate Division, in a consolidated opinion, rejected his sentence-related claims and PCR petition. *State v. Thompson*, No. A-1375-11T4, 2013 WL 11330431, at *4–5 (N.J. Super. Ct. App. Div. June 16, 2016). Thompson's petition for certification was denied on October 21, 2016. *State v. Thompson*, 154 A.3d 700 (N.J. 2016). He did not petition the Supreme Court for a writ of certiorari, and the deadline to do so expired on January 19, 2017. Thompson filed the current habeas petition in March 2018 (DE 1), more than one year after his conviction became final.

### 2.   Facts Related to the Loss or Destruction of Thompson's Legal Papers[1]

In 2015, while his state appeals were still pending, Thompson "possessed a set of trial transcripts and a copy of the State court briefs submitted on his behalf." DE 13-1 at 18. In May of that year, Thompson was transferred from NJSP to Essex County Correctional Facility. DE 1-1 at 2; DE 13-2 at 1–2. He attempted to bring his legal documents with him but was told by a corrections officer that he could only take whatever items fit inside a "little plastic envelope." DE 13-1 at 2. Thompson complained to a supervisor, who "compelled" him to provide names and addresses of persons who could retrieve his property from NJSP. *Id.* Thompson was allegedly told that his property would be thrown out if it was not picked up within 90 days.[2] *Id.* Thompson fit two transcript volumes inside the envelope. *Id*. When he returned to NJSP in March 2016, a corrections officer returned some photographs to him. DE 1-1 at 2; DE 13-3 at 8; DE 1-3 at 72. Thompson asked about the rest of his property and was told that "they (the institution) threw everything out." DE 13-3 at 3.

In 2016, Thompson completed an institutional grievance, an institutional grievance appeal, an institutional property claim, and a letter to a Department of Corrections ("DOC") ombudsman about his legal materials "without success." *Id*.; DE 1-3 at 74, 76. In August 2016, Thompson "was informed" that legal notes he provided the NJSP Inmate Legal Association were missing. DE 1-1 at 3. In 2017, Thompson completed an institutional grievance about his lost or destroyed legal materials "to no avail." DE 13-3 at 3. In October 2017, a letter was written on Thompson's behalf to the Special Investigations Division, NJSP branch, "without success." DE

---

[1] Thompson submitted two unsigned declarations in support of his equitable tolling argument, DE 1-1 and DE 13-3. For purposes of this decision, I accept the facts therein as true.

[2] One individual Thompson listed to pick up his materials "explained that they telephoned the institution on a weekend and was told that the mailroom Sergeant was not in so the property could not be released to them." DE 13-3 at 3.

13-3 at 3; DE 1-3 at 84. "In the past," Thompson made an open records request to the DOC "and received no records." DE 13-3 at 4. In September 2017, Thompson wrote letters to the clerk of this court, a judge of this court, and the Attorney General of New Jersey complaining about his missing legal documents, "without success." DE 13-3 at 4; DE 1-3 at 78, 80, 82. He filed this habeas petition in March 2018.

### 3. This Habeas Petition

Thompson's petition raises a *Batson* claim and two jury instruction challenges. DE 1. Apparently recognizing a potential problem as to timeliness, Thompson asserts that the "loss/destruction" of the trial transcripts and previously filed briefs was "an impediment to his ability to prepare and file his petition" and alleges, in effect, that the one-year period has not yet begun to run because the impediment—i.e., the loss of his legal materials—has not yet been removed. DE 1 at 9.

The State moved to dismiss, arguing that the petition is untimely because it was due on January 19, 2018, i.e., one year from the date Thompson's conviction became final, and that Thompson did not file it until over two months later, on March 29, 2018. DE 7 at 4. Thompson responded with a motion for partial summary judgment (DE 13), which functioned primarily as an opposition to the State's motion, as well as a motion to compel production of his trial transcripts (DE 15). He did not dispute the date that his conviction became "final," or that he had filed the petition more than a year from that date. Rather, he argued (1) that the one-year time limitation did not begin to run because the loss of his legal materials was an impediment to his ability to prepare and file his petition that was attributable to State agents, and (2) in the alternative, that he is entitled to equitable tolling. DE 1 at 9; DE 13-1 at 7, 14, 17, 21–23.

I denied the State's motion to dismiss without prejudice to further consideration of whether the case may be time-barred, and denied Thompson's motion for partial summary judgment. DE 28 at 2. In light of the State's representation that if it were ordered to answer the petition it would produce Thompson's trial transcripts, I ordered it to answer and denied as unnecessary Thompson's motion to compel production of his trial transcripts. DE 18 at 3.

The State then answered the petition (DE 19), and I granted Thompson's three requests for more time (DE 21–26), but Thompson never did file a response. However, on June 29, 2022, approximately 2.5 years after his response was due, he filed a request for production of documents, seeking copies of two jury instructions. *Id.* In a letter dated June 30, 2022, the State explained that the instructions in question had been provided to Thompson more than three years ago. DE 28 at 1. Thompson did not respond.

Thompson has had ample opportunity to respond to the answer or otherwise provide additional materials and he has not done so. Accordingly, the Court considers his habeas petition fully submitted and ready for decision. For the reasons below, the petition is dismissed as untimely and his request for production of documents is denied as moot.

## III.   DISCUSSION

### A.  The Petition Is Untimely

A petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 is subject to a one-year statute of limitations, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

"The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" includes the 90-day period in which a petitioner could have but did not file a petition for certiorari with the Supreme Court. *Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013); *Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 84 (3d Cir. 2013); *see also* 28 U.S.C. § 2244(d)(1)(A).

The New Jersey Supreme Court denied Thompson's petition for certification on October 21, 2016. *Thompson*, 154 A.3d 700. A petition for writ of certiorari would have been due 90 days later, on January 19, 2017. Because the final order of New Jersey's highest court disposed of both Thompson's direct appeal and his collateral attack, Thompson's writ of habeas corpus was due one year later, on January 19, 2018. As noted, Thompson filed his petition on March 29, 2018, about two months late.

Relying on 28 U.S.C. § 2244(d)(1)(B), Thompson asserts his petition is timely because the limitations period has not begun to run and will not begin to run until the "impediment" preventing his access to the courts—i.e., his missing legal materials—has been removed. DE 13-1 at 17. This argument is without merit.

Thompson is correct that, under § 2244(d)(1)(B), the limitations period does not begin to run until "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed," but this provision only

applies "*if the applicant was prevented from filing by such State action.*" 28 U.S.C. § 2244(d)(1)(B) (emphasis added).

Here, the loss of Thompson's legal materials did not prevent him from filing his petition. Indeed, the allegedly missing documents have never been returned to him, yet he *did* file this petition in March 2018. He points to no reason that he could not have filed the same petition two months earlier, in January 2018.

Moreover, the petition he filed is not a mere "placeholder" or "bare bones" petition (though even that would have been preferable to waiting); it is a comprehensive petition with grounds for relief, facts supporting each ground, and information about the procedural history of his direct and collateral appeals. DE 1. He also attached to his petition, *inter alia*, a declaration in support of his claims and his timeliness argument (DE 1-1); opinions of the New Jersey Supreme Court and Appellate Division (DE 1-3 20–67); a motion for appointment of counsel with citations to case law and statutes, (DE 1-3); and a "partial timeline" of his state court filings, with ten entries specifying the date, court, citation and/or docket number, and, where relevant, the disposition for each entry (DE 1-3 at 69). On these facts, it is apparent that the loss or destruction of Thompson's legal materials was not an impediment that prevented him from filing his petition. Many courts have so held in analogous cases.[3] Accordingly, the one-year time

---

[3] *See Pabon*, 654 F.3d at 404 ("Our Court has not addressed the meaning of 'impediment to filing' under § 2244(d)(1)(B). We do not reach the issue here because the impediment Pabon argues prevented him from filing remained un-removed: As far as we know, and as Pabon himself argues, at the time that he filed his *habeas* petition he was still denied Spanish-language materials, translation and legal assistance."); *Moore v. Wetzel*, No. 15-293, 2020 WL 9048744, at *14 (W.D. Pa. Sept. 25, 2020) ("Petitioner fails to persuade the Court that the confiscation of his core legal materials [by a corrections officer], in fact, 'prevented from filing a petition' in a timely manner, even a petition that was bare bones or . . . a 'placeholder petition.' Simply put, Petitioner fails to show that the alleged confiscation of his legal papers and thereafter the alleged retention thereof despite his requests for their return caused him to be unable to timely file a barebones Section 2254 Petition."); *Johnson v. Tritt*, No. 15-CV-823, 2017 WL 771254, at *6 (W.D. Pa. Feb. 28, 2017) ("The AEDPA does not define 'impediment to filing,' and the Third

8

limitation began to run on the date Thompson's conviction became final. Therefore, absent

equitable tolling (discussed below), Thompson's petition is untimely.

### B.  Thompson Has Not Established a Valid Basis for Equitable Tolling

AEDPA's statute of limitations is non-jurisdictional and thus subject to equitable tolling.

*Holland v. Florida*, 560 U.S. 631, 645–649 (2010). "Generally, a litigant seeking equitable

tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights

diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*,

544 U.S. 408, 418 (2005); *see also Jenkins*, 705 F.3d at 89. District courts "should be sparing in

their use of the doctrine" and limit its application only to the "rare situation where [it] is

demanded by sound legal principles as well as the interests of justice." *LaCava v. Kyler*, 398

F.3d 271, 275 (3d Cir. 2005) (internal citations omitted).

As to diligence, "reasonable diligence" is required, but "not maximum, extreme, or

exceptional diligence." *Ross v. Varano,* 712 F.3d 784, 799 (3d Cir. 2013). "This obligation does

not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists

during the period appellant is exhausting state court remedies as well." *LaCava*, 398 F.3d at 277.

"A determination of whether a petitioner has exercised reasonable diligence is made under a

subjective test: it must be considered in light of the particular circumstances of the case. The fact

---

Circuit Court of Appeals has not yet defined the phrase. Other courts have found, however, that an 'impediment to filing' might exist where a state court refuses to rule on a constitutional issue properly before it; where a clerk's office fails to timely file a petition; where a state delays a prisoner's receipt of notice that the judgment in his case is final; or where a prison offers inmates an inadequate law library. Whatever the facts of a particular case, the plain language of the statute makes clear that the prisoner must be '*prevented*' from filing a petition for habeas corpus.") (citations omitted; emphasis added); *Crawford v. Bickell*, No. 11-5773, 2012 WL 6962658, at *4 (E.D. Pa. Nov. 28, 2012), *report and recommendation adopted*, 2013 WL 359762 (E.D. Pa. Jan. 30, 2013) ("the 'State action' of [petitioner's] institutional transfer [and resulting loss of access to legal materials] cannot be described as an impediment to filing in a timely manner in this Court his § 2254 habeas petition, in that there is nothing to suggest that it prevented him from filing at least a placeholder petition").

that a petitioner is proceeding pro se does not insulate him from the 'reasonable diligence' inquiry and his lack of legal knowledge or legal training does not alone justify equitable tolling." *Ross*, 712 F.3d at 799–800 (internal citations omitted).

Extraordinary circumstances may be found where the petitioner: (1) has been actively misled, (2) has in some extraordinary way been prevented from asserting his rights, or (3) has timely asserted his rights in the wrong forum. *See Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001) (citation omitted). The requisite degree of extraordinariness turns on "'how severe an obstacle it is for the prisoner endeavoring to comply with the AEDPA's limitations period.'" *Pabon v. Mahanoy*, 654 F.3d 385, 400 (3d Cir. 2011) (citing *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008)). "In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." *Id.* (citations omitted); *see also Chang-Cruz v. Hendricks*, No. 12-7167, 2013 WL 5966420, at *7–8 (D.N.J. Nov. 7, 2013) (petitioner's argument that he or she lacks legal knowledge, "at least standing alone, cannot support equitable tolling of the AEDPA statute of limitations").

"[F]or a petitioner to obtain relief there must be a causal connection, or nexus, between the extraordinary circumstances he faced and the petitioner's failure to file a *timely* federal petition." *Ross*, 712 F.3d at 803 (emphasis added). "[I]t is not enough for a party to show that he experienced extraordinary circumstances. *He must further demonstrate that those circumstances caused him to miss the original filing deadline*." *Id.* at 803 n.29 (quoting *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011); emphasis added). "The word 'prevent' requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if

the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Id.* (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).

Thompson contends that "[t]he loss of legal materials and refusal to assist him [to] regain his materials are extraordinary circumstances warranting equitable tolling." DE 13-1 at 23. Further, he "diligently pursued his rights to access State and federal courts prior to the 1 year deadline" by (1) completing "letters and institutional grievances to regain his legal materials" "[b]efore his state court appeals were finalized," and (2) reaching out in 2017 "to the court and respondent to obtain assistance in regaining a copy of his trial transcripts." DE 13-1 at 23 at 22–23.

Applying the standards set forth above, I find that Thompson has not established extraordinary circumstances sufficient to justify equitable tolling. Thompson was aware of the allegedly missing briefs and trial transcripts before his state appeals were resolved and long before the clock even began to run on the limitations period. It is clear from the record before this Court that he had access to at least the state-level appellate decisions in his case. DE 1-3 20–67; DE 13-1 at 23. As evidenced by the petition itself, he possessed information sufficient to articulate his grounds for relief and supporting facts. Manifestly, the missing materials were not so severe an obstacle that he was prevented from preparing his petition. *See* DE 13-1 at 20, 22 (acknowledging that "transcript citations are not required by rule"). Moreover, if Thompson believed he did not have sufficient information to file his petition, he could have timely filed a "bare bones" petition and sought to supplement it thereafter. (In fact, as noted at p.8, *supra*, he

11

filed a detailed petition, as might be expected after 10 years of post-conviction litigation.) In similar contexts, federal courts have rejected a finding of extraordinary circumstances.[4]

Second, even if extraordinary circumstances existed, Thompson has not demonstrated that he diligently attempted to meet the January 2018 deadline. He was aware of the missing legal materials as early as March 2016 when he returned to NJSP and was returned the photographs he left behind, but not his legal documents. DE 1-3 at 72; *see also id.* at 74 (In August 2016, Thompson acknowledged in a grievance that the mailroom was "saying [his property] is not there."). That is, he was aware of the missing materials approximately 24 months before he filed his habeas petition, 22 months before the clock ran out on his time to file, and 18 months before he wrote to the district court and the Attorney General seeking assistance to resolve the issue of his lost or destroyed documents. *Id.* at 78–82. While Thompson surely did

---

[4] *See Brown v. Shannon*, 322 F.3d 768, 773 (3d. Cir. 2003) (failure of attorney to obtain a complete set of trial transcripts not an "extraordinary circumstance" justifying equitable tolling); *Cooper v. Ferguson*, No. 19-4030, 2021 WL 39630, at *4 (E.D. Pa. Jan. 5, 2021) (No finding of extraordinary circumstances where petitioner "continues to allege that documents were destroyed or never provided to him," however, "the supposed unavailability of these materials . . . did not prevent him from filing a federal habeas petition because he has filed the instant petition without apparently having these items.") (quotations and citations omitted); *Laws v. Vermont*, No. 10-306, 2011 WL 2642945, at *5 (D. Vt. May 16, 2011), *report and recommendation adopted*, No. 1:10-CV-306-JGM, 2011 WL 2581753 (D. Vt. June 29, 2011) ("Of the legal files that were allegedly confiscated by prison officials, the only item that Laws links directly to his PCR proceeding is the change of plea videotape and/or transcript. In order to show the required causal connection between the confiscation and his delayed filing, Laws must show that he could not have filed his PCR petition without a recording of the change of plea proceeding. He cannot make such an argument, however, since he ultimately filed his first PCR petition without having obtained the transcript."); *United States v. Francisco*, No. 09-CV-5809, 2010 WL 1381646, at *1 (E.D. Pa. Mar. 31, 2010) (Where, *inter alia*, "Petitioner waited seven months to request free copies of documents from the underlying criminal proceedings" and "did not even seek to file a timely petition and then clarify it once he had access to his materials," "Petitioner has not established that he was diligent in pursuing this habeas petition," and "has simply failed to show any extraordinary circumstances which would justify application of the exceptional equitable tolling rule"); *United States v. Shabazz*, No. 05-4717, 2006 WL 2854301, at *4 (E.D. Pa. Oct. 4, 2006) ("a lack of legal resources, including trial transcripts, does not constitute an extraordinary situation").

seek assistance in recovering his property, he did not diligently pursue the completion and timely

filing of his petition. *Id.* at 74–84. And it is the petitioner's diligence in filing his petition *timely*

that is critical. *See* Ross, 712 F.3d at 803 & n.29. His filing two months after the deadline, with

no evidence of any intervening event that changed his situation, demonstrates that he was able to

file a comprehensive petition without the missing materials. On more restrictive facts, federal

courts have rejected a finding of diligence.[5] Under these circumstances, Thompson has not

demonstrated the requisite level of diligence required for equitable tolling.

---

[5] *See Tomlin v. Britton*, No. CV 09-848, 2018 WL 9813189, at *1 (E.D. Pa. July 27, 2018)
("Even assuming prison officials' loss of a portion of Tomlin's legal materials—including what
he claims was a completed federal habeas petition—two and a half months before the federal
filing deadline constituted an extraordinary circumstance, Tomlin has not made a sufficient
showing of diligence. Although Tomlin describes in detail his efforts to obtain the return of his
missing legal materials through the prison grievance process, he does not describe what, if any,
steps he took to prepare a new federal habeas petition during the year the grievance process was
ongoing . . . . Notably, Tomlin was ultimately able to file a new federal habeas petition without
the benefit of his missing materials."); *Gantt v. United States*, No. 11-6191, 2014 WL 6471478,
at *4 (D.N.J. Nov. 18, 2014) ("Nor is it clear that Petitioner was actually prevented [by the
unavailability of legal materials] from filing his Petition due to any 'extraordinary
circumstances,' as he did in fact file his Petition one month after the statute of limitations had
run. . . . Had he been exercising reasonable diligence, Petitioner could have filed a timely
Petition based on the information he had in his possession."); *Floyd v. Cline*, No. 14-3012-SAC,
2014 WL 4824325, at *4–5 (D. Kan. Sept. 26, 2014) ("The court finds that petitioner has not
alleged specific facts showing that the confiscation of legal materials in his case in March 2012
prevented his timely filing of a 2254 petition by the deadline of May 27, 2013. . . . The 2254
petition that Mr. Floyd eventually managed to file contains clear details as to the procedural
history of his case together with case citations and plainly sets forth the issues raised in the state
courts on direct appeal as well as in post-conviction proceedings. It also sets forth the twelve
grounds on which he seeks federal habeas corpus review along with detailed supporting facts
including legal theories and assertion of constitutional violations. Mr. Floyd's allegations offer
no clue as to why he was able to prepare and file his very adequate 2254 petition without his
confiscated property after, but not before, the limitations period expired."); *Shabazz*, 2006 WL
2854301, at *4 (E.D. Pa. Oct. 4, 2006) ("Based on Shabazz's assertions, he was persistent in his
repeated requests to his former attorney for copies of his transcripts. However, he was not
reasonably diligent in filing his actual § 2255 motion on time. Defendant had more than 10
months when the prison was not on lockdown status during which he could have completed his
motion. Moreover, defendant has not alleged that he was actually prevented from filing "a basic
habeas petition" by his inability to obtain transcripts. . . . [H]e ultimately was able to complete a
'barebones' motion."); *Smith v. Adams*, No. 02-6124, 2005 WL 1335236, at *7 (E.D. Cal. June
1, 2005), *aff'd,* 176 F. App'x 830 (9th Cir. 2006) ("According to Petitioner, his legal materials

Third, the issue may also be viewed through the lens of causation. There is no causal relationship between the absence of the legal materials and the lateness of Thompson's filing. That Thompson was able to file his petition in March 2018 without the missing materials undercuts any argument that he, acting with reasonable diligence, could not have filed the same petition two months earlier notwithstanding the loss or destruction of those materials. He points to no events or circumstances intervening between January and March that enabled the filing. And, as explained above, Thompson filed a reasonably thorough petition that includes his grounds for relief, supporting facts, a supporting declaration, relevant state court decisions, and a timeline of the procedural history of his criminal case—all without the materials he claims were essential. DE 1; DE 1-1; DE 1-3 at 20–69. Accordingly, Thompson has not demonstrated a nexus between the circumstance of the missing legal documents and his failure to timely file.[6]

---

had been lost for over a year and a half (since December 20, 1997) [and] he had been attempting to recover his property since that time. In September of 1998, he was informed that his legal materials were lost or destroyed and could not be located. It was at this point that Petitioner should have begun work on redrafting his petition.").

[6] *See Satterfield v. Johnson,* 434 F.3d 185, 196 (3d. Cir. 2006) ("Where a petitioner is ultimately able to file his habeas petition, with or without having received replacement materials, the deprivation of legal documents does not justify equitable tolling."); *United States v. Francisco*, No. CIVA 09-CV-5809, 2010 WL 1381646, at *1 n.1 (E.D. Pa. Mar. 31, 2010) (no equitable tolling where "Petitioner was able to, and did, file his habeas petition without the requested [transcript and other records from his criminal proceeding], demonstrating that they were not necessary to the filing of this motion"); *see also Brown,* 322 F.3d at 773 ("[I]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing.") (quotations and citation omitted); *Flint v. Sec., Dept. of Corrections*, 13-3107, 2015 WL 5254323, at *5 (M.D. Fla. 2015) (petitioner's legal materials "were allegedly confiscated by Department of Corrections personnel, . . . [b]ut [petitioner] cannot establish a causal link between the alleged confiscation of his legal papers on this date and his untimely filing"); *Hunter v. Sec'y, Fla. Dep't of Corr.*, No. 12- 369, 2015 WL 248754, at *3 (M.D. Fla. Jan. 20, 2015) ("Petitioner's contention that his legal papers were destroyed does not justify equitable tolling. Petitioner . . . has not shown that the destruction of his documents prevented him from timely filing the instant petition," and thus, "has not established a causal connection

I do not condone the carelessness, not to say callousness, of the prison authorities in safeguarding the petitioner's legal materials, assuming that their actions were as described. But even assuming the truth of Thompson's allegations, he has not demonstrated that this case presents the "rare situation" allowing for equitable tolling. *LaCava*, 398 F.3d at 275.

### C.  Certificate of Appealability

AEDPA provides that an appeal may not be taken from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability stating that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), the United States Supreme Court held: "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. I will deny a certificate of appealability because jurists of reason would not find it debatable that this petition is untimely.

### D.  CONCLUSION

For the reasons stated above, Thompson's petition for habeas corpus (DE 1) is dismissed as untimely and a certificate of appealability is denied. Thompson's motion for production of documents (DE 27) is denied as moot. An appropriate order follows.

DATED:  October 31, 2022

/s/ Kevin McNulty

_____

KEVIN MCNULTY
United States District Judge

---

between his separation from his legal documents and his late filing of his federal habeas petition.").